IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD R. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-859 |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH, OFFICER | ) | |
| FAQUAR T. HOLLAND, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is the JOINT MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants, the City of Pittsburgh and police officer Faquar Holland *(Document Nos. 37 and 38)*. Plaintiff, Gerald Brown, has filed a RESPONSE, a RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS and a BRIEF IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT (*Document Nos. 49, 50, 51*). The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the relevant case law, and the record as a whole, the Court finds that the City's motion for summary judgment will be granted and Holland's motion for summary judgment will be denied.

**BACKGROUND**

In resolving a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party. Similarly, the first step in evaluating a claim of

qualified immunity is to "determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). Accordingly, unless otherwise noted, the factual background is based upon Plaintiff's Responsive Concise Statement of Material Facts *(Document No. 50)*.

The incident which gave rise to this lawsuit occurred on August 9, 2003 in the early afternoon. During half-time of a Steelers exhibition game, Plaintiff Brown went outside to sit on his front porch in the South Oakland area of Pittsburgh. Defendant Officer Holland had been dispatched to the area to investigate an aggravated assault involving juveniles in the neighborhood. Three other police cars were also in the area. When Brown came outside, Holland had arrested a juvenile and placed her in his patrol car and was gathering additional information from the girl's grandmother, who was Brown's next-door neighbor. Brown was approximately four feet away, on his portion of a long common porch separated by dividers.

Holland claims that Brown made numerous profane comments to him. Brown claims that his initial comments were directed to his neighbor on the other side. Holland testified at Brown's summary appeal hearing in state court that Brown kept repeating: "That's fucked up, that he's arresting that girl." The parties dispute whether Brown's comments were loud. Holland then came onto Brown's porch, hollering and using profanity at Brown, but then went back to his interview. After another exchange of words, Holland returned, handcuffed Brown and forced him to sit on his front steps for fifteen to twenty minutes.

The parties dispute the impact of Brown's comments on the situation. According to Brown, it was quiet on the street until Holland came onto his porch and began yelling. The neighbors came out of their homes when the police cars arrived, not in response to Brown's

conduct. The bystanders were not hostile to the officers, were not provoked or incited by Brown's comments, and did not impede the investigation.

After completing his interview, Holland exchanged vehicles with another officer because his patrol car did not have a safety screen, and transported Brown to the Allegheny County Jail. Brown has chronic back pain from a prior surgery, but he was not permitted to take his pain medications with him to the jail. Brown alleges that Holland drove erratically by changing lanes and speeding. Because Brown was not seatbelted, and was handcuffed, he was jostled about in the back seat of the car, which exacerbated his back pain. The next day, Brown went to the emergency room due to the pain and on August 15, 2003 he visited his treating physician, Brian Cicuto, D.O. Brown missed two weeks of work until the pain was under control.

Brown was charged with two counts of disorderly conduct – a misdemeanor and a summary offense. When Holland failed to appear at the hearing, the District Justice dismissed the charges. Holland refiled the charges, and after a hearing in October 2003, Brown was found guilty of the summary offense by the District Justice. Brown appealed to the Court of Common Pleas, which ruled that Brown's conduct was protected by the First Amendment and the charges were dismissed. This litigation followed.

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

### DISCUSSION

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  A *prima facie* case under § 1983 requires a plaintiff to demonstrate:  (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  In the instant case, Brown alleges that Officer Holland violated his First Amendment rights, arrested him without probable cause, used excessive force in carrying out the arrest, and maliciously prosecuted him.  Brown also asserts a

Section 1983 claim against the City of Pittsburgh for its alleged failure to adequately train, supervise and discipline its police officers.

Claims Brought Against Officer Holland

It is undisputed that Defendant Holland was a state actor. The key issue is whether Holland had probable cause to arrest and press charges against Brown for disorderly conduct. In addition, Holland asserts that he is entitled to qualified immunity.

The Pennsylvania Disorderly Conduct statute states: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise, (3) uses obscene language, or makes an obscene gesture, or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. C.S.A. § 5503.

In *City of Houston v. Hill*, 482 U.S. 451(1987), the Supreme Court overturned a conviction for disorderly conduct where the defendant shouted at a policeman who was arresting his friend. The Court explained that verbal criticism, challenges and profanity directed at police officers is protected by the First Amendment unless the speech is "likely to produce a clear and present danger of serious substantive evil that rises far above public inconvenience, annoyance or unrest." *Id.* at 461 (citations omitted). In *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999), the Pennsylvania Supreme Court held that the use of profanity and verbal abuse towards police officers did not constitute disorderly conduct. In *Commonwealth v. Gilbert*, 674 A.2d 284 (Pa. Super. 1996), the Pennsylvania Superior Court

concluded that a person who had yelled at a policeman in the process of towing his neighbor's car, and ignored three warnings to be quiet, had not engaged in disorderly conduct, even though the officer testified that half the neighborhood eventually came out to view the ruckus. *Id.* at 287. The Court explained that Pennsylvania law is clear that the disorderly conduct statute may not be used to punish persons for exercising their First Amendment rights, including the right to oppose police action. *Id.* at 286-87. *Compare Commonwealth v. Mastrangelo*, 414 A.2d 54 (Pa. 1980) (upholding conviction for disorderly conduct where actor followed meter maid shouting vulgarities for two consecutive days).

Viewing the record in the light most favorable to Plaintiff, Holland's motion for summary judgment must be denied. Under Brown's version of the facts, Holland improperly arrested and prosecuted him merely for exercising his First Amendment rights. A reasonable factfinder could conclude that Brown did not interfere with the investigation or provoke a dangerous reaction by the onlookers. Thus, the jury could conclude that Holland did not have probable cause to arrest Brown. Moreover, because the law is clear that mere verbal criticism of police is protected speech and does not constitute disorderly conduct, Holland is not entitled to qualified immunity. Indeed, the record reflects that Pittsburgh police officers have had specific training regarding the holding in *Hock*. Responsive Concise Statement of Material Facts ¶ 105; Appendix P. At trial, Holland will have a full opportunity to convince the factfinder that he had probable cause to believe that Brown had committed disorderly conduct.

In Holland's last argument, he contends that because Brown was convicted of disorderly conduct by a District Justice, probable cause for the arrest was conclusively established, even though the charges were later dismissed by the Court of Common Pleas. *See*

*McGriff v. Vidovich*, 699 A.2d 797, 799-800 (Pa. Commw. 1997) (citations omitted) (relying on Restatement (Second) of Torts § 667(1)). Plaintiff cites a competing line of cases for the proposition that a conviction by a justice of the peace on a summary proceeding that is ultimately reversed on appeal is not sufficient to conclusively establish probable cause. *See, e.g., Cap v. K-Mart Discount Stores, Inc.*, 515 A.2d 52 (Pa. Super. 1986). Perhaps these authorities can be harmonized, as a finding made after a summary proceeding should be entitled to less weight in establishing probable cause than a conviction after a full jury trial. This distinction may have particular weight where, as here, the conviction was reversed because the higher court determined that the conduct was constitutionally protected. However, this Court need not dwell on the relative merits of the competing positions because in *Montgomery v. DeSimone*, 159 F.3d 120 (3d Cir. 1998), the United States Court of Appeals for the Third Circuit held that the common law Restatement rule does not apply in Section 1983 cases and concluded that an overturned magistrate conviction does not conclusively establish probable cause. Due to the factual discrepancies in *Montgomery,* the Court remanded the case for a jury to determine whether probable cause existed. The same approach will be followed in the instant case and Officer Holland's motion for summary judgment will be denied.

Claims Against the City of Pittsburgh

Section 1983 claims against a municipality are significantly different than those against an individual law enforcement officer. A municipality, such as the City of Pittsburgh, cannot be held liable under a *respondeat superior* theory. Instead, a plaintiff must establish that the constitutional deprivation resulted from an official custom or policy of the municipality.

*Montgomery*, 159 F.3d at 126 (citing *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978)). In addition, Brown must establish that the City of Pittsburgh was deliberately indifferent to known or obvious consequences. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410 (1997). This is a stringent standard, in which a plaintiff must demonstrate that the municipality consciously disregarded an obvious risk that an officer would subsequently inflict the particular constitutional injury he allegedly suffered. *Id.* at 411.

To establish municipal liability, a plaintiff must: (1) identify a policy or custom; (2) attribute the policy to a municipal defendant; and (3) demonstrate a causal connection between the policy and the constitutional violation. *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985). In this action, Plaintiff identifies three policies, practices or customs that violated Brown's constitutional rights and resulted in his injuries: (1) failing to properly train and supervise officer Holland; (2) conducting "screen tests" of detainees not wearing seatbelts during transportation to jail; and (3) not permitting detainees to take medication with them to the jail. Each will be discussed seriatim.

    1. Failure to Train

Plaintiff must identify a failure to provide specific training that has a causal nexus to his injuries and must show that the absence of such training reflects deliberate indifference by the City to whether the constitutional violation occurred. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Plaintiff concedes that he must demonstrate that the need for better supervision was obvious. *See* Plaintiff's Brief at 26. There is simply no record evidence from which a reasonable factfinder could conclude that it was obvious to the City that Holland would

violate Brown's constitutional rights. Plaintiff points to Holland's marital troubles and to a list of comments on Holland's performance appraisals. Plaintiff also points to Holland's transfer from Narcotics and Vice to the Squirrel Hill stationhouse. *See* Appendices S, T. These exhibits do not support Plaintiff's case. Appendix S is a Credibility Report prepared by Cindy Lou Dietrich on November 26, 2003. It contains a fairly lengthy list of OMI reports concerning Officer Holland. However, in all but one instance involving allegations of excessive force or "conduct towards public," Holland was exonerated or the allegation was "not resolved." The only incident in which similar allegations of misconduct towards the public were sustained occurred in 1998, some five years prior to the subject incident. Appendix T is a performance appraisal for January-June 2003 that was prepared on July 3, 2003 (approximately one month prior to the subject incident.) There are numerous criticisms of Holland's performance, including poor written communications, lack of organization, missing court appearances, violations of rules and regulations, and an arrest for domestic violence. However, there is nothing in the appraisal by which the City knew or should have known that Holland was an obvious risk to citizens' constitutional rights. To the contrary, the summary in the performance appraisal stated: "Detective Holland has shown promise during past review periods. A change in work assignments may be beneficial for him and I believe he will improve his performance in future evaluation periods." *See Montgomery*, 159 F.3d at 127 (failure to supervise can only be basis for municipal liability if plaintiff can show knowledge of a prior pattern of similar incidents and that supervision communicated a message of approval to the offending officer). As noted above, the record establishes that the City provided specific training to its police officers regarding the holding in *Hock* that the disorderly conduct statute cannot be used to

protect police from all verbal indignities. Responsive Concise Statement of Material Facts ¶ 105; Appendix P. In other words, the City provided training on the very topic that forms the gravamen of Plaintiff's claim. In summary, Plaintiff falls far short of the stringent standard necessary to attribute Holland's alleged violation of Brown's rights to deliberate indifference by the City of Pittsburgh.

### 2. Transportation of Detainees

Plaintiff cannot establish a Section 1983 violation by the City based on his transportation to the jail. First, Plaintiff cannot identify an official custom or policy. Plaintiff selectively cites to the record evidence regarding "screen tests" or "rough rides." Plaintiff cites to Officer Vogel's testimony that he had heard of detainees being given "screen tests," designed to jostle a handcuffed detainee during transport. Vogel Deposition at 35-36. However, Vogel went on to testify: "[T]hat is a cultural mind-set that has changed probably fifteen years ago and I don't know of anybody who would even remotely do that in this day and age . . . ." *Id.* Vogel also testified that in 1999 the City placed contoured seats in the back of cars to prevent detainees from sliding around during transport. *Id.* at 37. Plaintiff also cites to the deposition of officer Wright to establish the custom of a "rough ride." However, Wright's actual testimony was that the only familiarity he had with the term was an indirect mention in training "Obviously that's not something an officer should do." Wright Deposition at 22. Accordingly,

there is no evidence by which a reasonable factfinder could conclude that the City of Pittsburgh has an official policy or custom of conducting screen tests or rough rides.[1]

Additionally, Plaintiff has failed to establish the causation element. Plaintiff contends that Brown's treating physician attributed the exacerbation of Brown's preexisting back condition to the "screen test" and seat belt policy. However, Dr. Cicuto's opinion is non-specific, stating only that there was an exacerbation of his symptoms after the incident "including the arrest and the subsequent transfer to jail." Appendix O. Dr. Cicuto further stated: "Certainly there is a causative nature of his symptomatology that occurred from the incident that had occurred on 8/09/2003." *Id.* The record discloses that there are numerous events during the incident that may have aggravated Brown's back, including allegations that Holland put Brown's arm against his back and shoved him against the railing, that Brown was forced to sit on concrete steps for 15-20 minutes, that Holland performed a "rough ride" during transport, and that Brown was required to either stand or sit on a hard bench or on the concrete floor during the 8-9 hours he was detained at the Allegheny County Jail. Responsive Concise Statement of Material Facts ¶¶ 26, 96, 98; Appendix C. There is no evidence in the record by which a reasonable factfinder could conclude that Brown's injuries were caused by the City's policy of not requiring detainees to wear a seatbelt.

---

[1] The law is clear that any residual force, such as a "screen test," used after the subject is in custody would be improper, such that Holland would not be entitled to qualified immunity.

3. Denial of Pain Medication

Plaintiff's claim regarding the City's policy as to pain medication suffers from a similar causation flaw. Plaintiff's counsel requested that Dr. Cicuto comment on Mr. Brown's inability to take his pain medication to the jail. In response, Dr. Cicuto authored an addendum on November 20, 2006, which noted that his earlier report had found an exacerbation of Brown's symptoms and stated: "Mr. Brown should have been permitted to utilize his medicines at the jail to bring his pain under control." Appendix O. Obviously, this statement falls far short of an expert opinion, made to a reasonable degree of medical certainty, that the City's policy caused Brown's injuries. *See Hamil v. Bashline*, 392 A.2d 1280, 1285 (Pa. 1978) (plaintiff must establish causation of personal injury by medical expert testimony).

As an alternative basis for granting summary judgment, Plaintiff also cannot demonstrate a constitutional violation concerning his pain medication. The denial of medication claim is premised not on the alleged unreasonable use of force, but rather on an alleged indifference to serious medical needs.[2] The "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman*, 47 F.3d at 637. "Deliberate indifference" requires proof that the officers knew of the arrestee's need for medical care and either (i) intentionally refused to provide such care, (ii) delayed medical care for non-medical reasons, or (iii) denied a reasonable request for treatment. *Durmer v. Carol*, 991 F.2d 64, 68 (3d Cir. 1993). A "serious medical need" is one that has

---

[2]The Constitutional right arises under the Fourteenth Amendment, rather than the Eighth Amendment, as Brown was a pretrial detainee, although it is based on a similar standard.

been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's urgent attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Minor injuries which do not require hospital care do not trigger the due process clause. *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). The record reflects that Brown went home after his detention, did not go to the emergency room until the next day, and did not visit Dr. Cicuto until six days after the incident. Dr. Cicuto did not order x-rays, but instead provided analgesics and arranged to replace Brown's mattress. Exhibit O. There is no expert medical opinion establishing that Brown's condition was serious, as required by *Boring*. To the contrary, Dr. Cicuto concluded that: "Long term or permanent changes are not felt to have occurred." *Id.* While the Court empathizes with Mr. Brown and his back pain, that condition is not of a constitutional magnitude. *Compare Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (excruciating back pain with real possibility of permanent injury could qualify as serious medical need).

      The record also establishes that Plaintiff was asked questions by jail staff concerning his medical attention needs and was told to request pain medication after he had been screened. Brown Deposition at 84-85. Municipal liability cannot be based on an inadvertent failure to provide adequate care or on physician negligence. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). The Court concludes that on this record, no reasonable factfinder could find that the City had a policy or custom of deliberate indifference to Plaintiff's "serious medical need."

## CONCLUSION

In summary, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Officer Holland violated his constitutional rights. However, the record cannot support liability against the City based on a policy or custom that was deliberately indifferent to Brown's constitutional rights. Accordingly, the Joint Motion for Summary Judgment filed by Defendants will be granted in part and denied in part. Summary judgment will be granted in favor of the City of Pittsburgh denied as to Officer Holland.

An appropriate order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD R. BROWN, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | 2:05-cv-859 |
| v. | ) | |
| | ) | |
| **CITY OF PITTSBURGH, OFFICER FAQUAR T. HOLLAND,** | ) ) | |
| | ) | |
| Defendants. | ) | |

### ORDER OF COURT

AND NOW, this 30th day of January, 2007, in accordance with the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, AND DECREED** that the Joint Motion for Summary Judgment filed by Defendants, City of Pittsburgh and Officer Faquar T. Holland *(Docket No. 37)*, is **GRANTED IN PART AND DENIED IN PART.** The City of Pittsburgh's motion for summary judgment is **GRANTED** and the City is dismissed from the case. Officer Holland's motion for summary judgment is **DENIED**.

Plaintiff shall file a Pretrial Statement on or before March 1, 2007 and Defendant Holland shall file a Pretrial Statement on or before March 30, 2007. A Pretrial Conference is scheduled on April 13, 2007 at 9:00 A.M. before the undersigned.

                                                              BY THE COURT:

                                                              s/Terrence F. McVerry
                                                              United States District Court Judge

cc:    Barbara M. Wolvovitz, Esquire
       Email: bmw@fgsmlaw.com

CITY OF PITTSBURGH

   Michael E. Kennedy, Esquire
   Email: michael.kennedy@city.pittsburgh.pa.us

OFFICER FAQUAR T. HOLLAND
   Bryan Campbell, Esquire
   Email: bryancmpbl@yahoo.com